UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SALLY L HOLTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:07-CV-526 CAN |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On October 25, 2007, Plaintiff, Sally L. Holtz ("Holtz"), filed her complaint in this Court. On March 31, 2008, Smith filed an opening brief asking this Court to remand this matter to the Commissioner pursuant to 42 U.S.C. § 405(g). On May 15, 2008, Defendant, Commissioner of Social Security ("Commissioner"), filed its response. On June 11, 2008, Holtz filed her reply brief. On November 3, 2009, pursuant to the parties' consent, this case was reassigned to the undersigned for all purposes. This Court now enters the following opinion and order based upon the pleadings, filings, and administrative record.

**I.  PROCEDURE**

On November 27, 2002, Holtz filed her application for Disability Insurance Benefits. Holtz is insured for Disability Insurance Benefits through December 31, 2007. Holtz claims she is entitled to benefits pursuant to Title II of the Social Security Act. See 42 U.S.C. § 423.

On February 16, 2005, Holtz appeared at a hearing before an Administrative Law Judge ("ALJ") claiming disability due to asthma, chronic obstructive pulmonary disease, chronic pain syndrome, dyspnea, and pneumonia. On February 28, 2006, the ALJ found that Holtz was not

1

disabled.

On March 8, 2006, Holtz appealed the ALJ's decision to the Appeals Council. On July 20, 2007, the Appeals Council denied review; and, as a result, the ALJ's decision became the Commissioner's final decision. 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on October 25, 2007, Holtz filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## II. ANALYSIS

### A. Facts

Holtz was 56 years old at the time of her hearing before the ALJ. Holtz has past relevant work as an insurance clerk, a secretary and an accounts payable clerk for a construction company. Holtz also has work experience as a supervisor at a casino, a florist clerk, a bank service representative, and a jewelry clerk, though it is disputed whether these jobs qualify as substantial gainful activity and past relevant work.

#### 1. Treating Physicians

##### a. Anthony Umolu, M. D.

In December 2002, Holtz sought treatment from Anthony Umolu, M.D. ("Dr. Umolu") for "multiple medical problems inclusive of polymyalgia, exacerbation of COPD . . . [and] chest pain aggravated by cough." Holtz was found to have limited range of motion of her joints and upper and lower extremities, generalized palpable tenderness involving the musculature, some degree of muscle wasting, lumbosacral palpable tenderness with paraspinal spasm, and bilateral sciatic tenderness. A neurological exam, however, was "grossly normal." In addition,

observations showed Holtz' chest to be clear, and a chest x-ray showed a "[s]table chest, clear of active disease." Over the next few months, Dr. Umolu saw Holtz two more times for continuing joint pain and a persistent cough. Around this same time, Dr. Umolu completed a "Medical Assessment Tool" for Holtz's disability insurer, noting that Holtz was unable to work from January 6, 2002 until February 6, 2003.

In early March 2003, Dr. Umolu submitted an opinion to the Indiana Department of Workforce Development, stating that Holtz became disabled on November 23, 2002 and was advised to quit working on January 6, 2003. Shortly thereafter, Dr. Umolu saw Holtz for a "physical examination for disability determination." Dr. Umolu noted Holtz' recent complaints of back pain but also noted that, upon examination, Holtz' extremities were normal and a neurological examination was grossly normal. Despite these results, however, Dr. Umolu concluded by opining that Holtz was "wholly disabled" and unable "to engage in any meaningful employment duties in the near or far future."

Between April 2003 and November 2004, Dr. Umolu saw Holtz ten more times for various conditions. In August 2003, Holtz complained of lower extremity pain. Dr. Umolu recommended vascular studies, but Holtz declined for economic reasons. Later, in November 2004, Holtz complained of right upper quadrant pain and lower back pain. Dr. Umolu recommended ultrasonography, but Holtz again declined for economic reasons.

   b. <u>Douglas Mazurek, M. D.</u>

Beginning in January 2002, Holtz started seeing Douglas Mazurek, M.D. ("Dr. Mazurek") primarily for issues of pneumonia, shortness of breath, sore throat, and ear aches. Dr. Mazurek prescribed steroids and inhalers to help with Holtz' breathing. After months of

ongoing treatment for these conditions, in October 2003, Dr. Mazurek completed a Medical Source Statement. Dr. Mazurek opined that Holtz had no carrying, lifting, sitting, pushing, pulling, manipulative or communicative limitations; but he also opined that Holtz couldn't stand or walk more than two hours in a work day, could only occasionally bend, balance, kneel, crouch, crawl, or stoop, and may be affected if exposed to temperature extremes, dust, humidity, fumes, odors, chemicals, and/or gases.

   c.  <u>Wallace Sherritt, D.O.</u>

During the same time period, Holtz also began seeing Wallace Sherritt, D.O. ("Dr. Sherritt"), a gynecologist, for a variety conditions. On January 8, 2003, Dr. Sherritt wrote a letter on Holtz's behalf to the Disability Determination Bureau ("DDB"), outlining the various referrals he had made for Holtz', including referrals to a gastroenterologist, a neurologist, a pulmonologist, and a cardiologist. Pursuant to these referrals, several tests were performed which all evidenced normal results, including: a Doppler study, an MRA of Holtz' arteries, an MRI of Holtz' brain, an EEG and a VER. Finally, an EMG/NCV and a SER showed no evidence of neuropathy or nerve root irritation. However, Virgil A. DiBiase, M.D., a neurologist who requested most of the tests, identified Holtz to have chronic pain syndrome, paresthesias, and give-way weakness which sometimes impaired Holtz' ability to walk. Dr. Sherritt ended his letter to the DDB by opining "[w]ith the long standing issues and varieties of complaints I certainly can see where maintaining a steady job would be most difficult for [Holtz]."

  2.  <u>State Agency Physicians</u>

In March 2003, consulting physician, Suresh Mahawar, M.D. ("Dr. Mahawar"), examined Holtz. With regard to Holtz' breathing issues, Dr. Mahawar noted "[n]o deformity and

4

no accessory muscles used in respiration," and "minimal degree of wheezing in both lungs." Regarding pain in Holtz' extremities, Dr. Mahawar observed no cyanosis or edema, no anatomic abnormalities and negative straight leg raises. In addition, Dr. Mahawar observed no atrophy of Holtz's extremities and normal grip strength and fine and gross manipulations. Holtz' gait and station were also determined to be normal. Finally, Dr. Mahawar observed no difficulties in getting on/off the exam table, tandem walking, walking on toes, and walking on heels, and mild difficulty in squatting and rising and hopping on one leg.

On April 7, 2003, state agency physician, J. V. Corcoran, M.D., and state agency psychologist, J. Gange, Ph.D., reviewed the evidence of record. Dr. Corcoran concluded that Holtz could occasionally lift, push, pull and/or carry up to 50 pounds and frequently lift, push, pull, and/or carry up to 25 pounds; could stand and/or walk about 6 hours in a work day; and could sit about 6 hours in a work day. In addition, Dr. Corcoran found no postural or manipulative limitations, and opined that Holtz' alleged symptoms were only "partially credible." Dr. Gange completed a Psychiatric Review Technique form and concluded that Holtz had no medically determinable mental impairment, and noted that Holtz' anxiety and depression "does not limit her daily activities." In August 2003, state agency physician J. Gaddy, M.D., and state agency psychologist W. Shipley affirmed the determinations and opinions of Dr. Corcoran and Dr. Gange.

  3. <u>Hearing Testimony</u>

At the hearing, Holtz testified that she did not believe she could perform sedentary work because her pain made it difficult for her to sit, stand, or walk for any length of time. Holtz specified that even a half-an-hour of not moving was uncomfortable, though tolerable. Holtz

further testified that she spent six to seven hours per day lying down with her legs elevated to alleviate the pain. In addition, Holtz testified that her arms sometimes became numb and her hands often lock up when she picks up objects.

In 2003, Holtz completed two daily activities questionnaires, indicating that she cooked, did laundry, drove, read, and did house cleaning on a daily or weekly basis. However, with respect to housekeeping and laundry, she testified that she frequently had to take breaks because of pain, shortness of breath, and muscle fatigue. Holtz also qualified that she rarely went grocery shopping and that she only did light cooking.

   4. <u>Vocational Expert Testimony</u>

ALJ Bernstein asked a vocational expert whether Holtz could preform any of her past relevant work with the following limitations: no atmospheres with greater than ordinary accumulations of dust, smoke, and chemical fumes; no more than occasional stooping, kneeling, and bending; no prolonged walking; a whenever-necessary sit/stand option; and no lifting and carrying up to 20 pounds more than occasionally and up to 10 pounds more than frequently. The vocational expert responded that Holtz would be able to perform the sedentary work that Holtz had done in the past, including the work of an insurance clerk, secretary, and accounts payable clerk. When the ALJ modified the hypothetical to include the ability to sit or stand in the same position for 30 minutes, the VE added that Holtz would also be able to perform the light work that she had done in the past, including the work of a bank clerk, general office clerk, and file clerk.

  B. <u>Standard of Review</u>

The standard of review for an ALJ's decision is whether it is supported by substantial

evidence and free of legal error.  See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003).  Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1972).  A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to her conclusion.  Haynes, 416 F.3d at 626.  An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues.  Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  However, an ALJ's legal conclusions are reviewed *de novo*.  Haynes, 416 F.3d at 626.

  C. Holtz's Motion for Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Holtz must establish that he was "disabled."  See 42 U.S.C. § 423(a)(1)(D).  The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled.  The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments, (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, (4) the claimant's residual functional capacity leaves him unable to perform her past relevant work, and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352.  If the ALJ

finds that the claimant is disabled or not disabled at any step, he may make her determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

The ALJ found that Holtz has severe impairments of asthma, chronic obstructive pulmonary disease, and sciatica.. The ALJ determined that Holtz's impairments or combination of impairments were not listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Holtz's RFC allowed her to perform a restricted range of light work. Specifically, the ALJ determined that Holtz could lift twenty pounds occasionally and ten pounds frequently, could not reach extreme postures, could not work in atmospheric concentrations of dust, smoke, and chemical fumes, could not engage in prolonged walking, required the opportunity to sit or stand at will but was able to remain in either a sitting or standing position for at least 30 minutes at a time. As a result, the ALJ determined that Holtz could perform her past relevant work. Consequently, the ALJ determined that Holtz was not disabled.

The issues this Court must resolve are: whether the ALJ correctly assessed Holtz's

credibility, whether the ALJ correctly assessed Holtz's RFC based upon the medical evidence, and whether the ALJ properly relied on the VE's testimony in making his determination that Holtz retained the ability to do her previous work.

        1.      <u>The ALJ's determination that Holtz's testimony was not fully credible was supported by substantial evidence.</u>

Holtz criticizes the ALJ's credibility determination as unsupported by substantial evidence in the record. Upon review, however, this Court finds the ALJ's determination to be substantially supported and sufficiently explained to prevent remand.

Because an ALJ is in a special position where he can hear, see, and assess witnesses, her credibility determinations are given special deference, and as a result, her credibility determinations will only be overturned if they are patently wrong. <u>Jens v. Barnhart</u>, 347 F.3d 209, 213 (7th Cir. 2003). "Only if the trier of fact grounds her credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." <u>Prochaska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). Social Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding. <u>Golembiewski</u>, 322 F.3d at 915; <u>Steele v. Barnhart</u>, 290 F.3d 936, 942 (7th Cir. 2002). An ALJ cannot simply state that an individual's allegations are not credible. <u>Golembiewski</u>, 322 F.3d at 915. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001). When an ALJ's determinations are based on objective factors rather than subjective considerations, such as the claimant's demeanor, there is greater freedom to review the ALJ's decision. <u>Clifford</u>, 227 F.3d at 872. However, an ALJ is not required to provide a "complete written evaluation of every

9

piece of testimony and evidence." Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (quoting Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)).

Holtz testified that her pain impairs her to the point of disability. However, the ALJ concluded that the objective medical evidence, Holtz' course of treatment for her conditions, and Holtz' daily activities did not support as much functional limitation as Holtz alleged. Regarding the objective medical evidence, the ALJ noted the findings from Dr. Mahawar's consultive examination, in which no significant medical abnormalities were identified, Holtz showed normal strength and manipulative abilities, and Holtz exhibited the ability to walk and squat with either mild or no difficulty. Regarding the course of treatment, the ALJ noted that the conservative treatment recommended by Holtz physicians, emphasizing pain management instead of surgery. Finally, regarding Holtz's daily activities, the ALJ noted Holtz' ability to live alone, and to cook and vacuum as evidence that Holtz maintained some ability to work. Based upon all of this evidence, the ALJ determined that Holtz had some limitations because of her pain but concluded that the limitations were not as severe as described.

Holtz makes a weak attack at the ALJ's credibility determination, arguing that the ALJ's characterization of Holtz' course of treatment as conservative was "vague" and contending that the ALJ improperly relied upon evidence of Holtz' daily activities to conclude that Holtz was not fully credible. This Court does not agree with either argument.

Although Holtz' points to her extensive medical record as support for an alternative finding that she received a more aggressive course of treatment, this Court concludes that the ALJ reasonably concluded that Holtz' course of treatment was conservative in nature. While Holtz identifies a large volume of treatment for her numerous condition, many unrelated to pain,

10

Holtz fails to identify specific treatments that the ALJ failed to consider when making his conclusion regarding the conservative nature of Holtz' treatment. In contrast, the ALJ pointed out that Holtz' treatment was directed towards pain management, massages, hot baths, and occasional injections rather than more aggressive surgery. Given the ALJ's citation to abudant record evidence, this Court concludes that the ALJ's opinions in this regard are neither vaguely articulated or insufficiently supported.

Similarly, although Holtz argues that the ALJ improperly relied upon Holtz' daily activities to conclude that Holtz' pain was less limiting than alleged, this Court finds that the ALJ's consideration of this evidence to be reasonable as well. Holtz contends that the ALJ can not rely solely on Holtz' ability to do intermittent household activities to determine that Holtz can function in a competitive work environment. However, in this case, the ALJ did not rely solely upon evidence of Holtz' daily activities to support his credibility finding. Instead, in a two page discussion of Holtz' credibility, the ALJ considered Holtz' testimony in relation to the objective medical evidence, Holtz' prescribed course of treatment, *and* her daily activities. As such, Holtz' bare assertion of law in this regard is not applicable to the ALJ's analysis in this case.

Consequently, this Court concludes that the ALJ's credibility determination was reasonable, substantially supported, and sufficiently articulated.

> 2. <u>The ALJ's conclusion regarding Holtz's RFC was also supported by substantial evidence.</u>

Holtz also asserts numerous arguments against the ALJ's ultimate RFC finding, none of which this Court finds persuasive.

Primarily, Holtz argues that the ALJ improperly discounted Dr. Umolu's opinion and failed to discuss the opinion of Dr. Sherritt, both treating physicians. In addition, Holtz argues that the ALJ failed to incorporate all of Dr. Mazurek' stated limitations. An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). More weight is generally given to the opinion of a treating physician because she is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 416.927(d)(2); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000). However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001). Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Clifford, 227 F.3d at 870. When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh. Hofslien, 439 F.3d.at 377.

In regards to Dr. Umolu's opinion, the ALJ concluded that,

> [a]lthough Dr. Umolu indicated that he saw no evidence of the claimant's ability to engage in any meaningful employment, and indicated that the claimant's application for disability should be honored, he did not provide sufficient medical findings to support such a conclusion.

Tr. 44. The ALJ went on to explain that the objective medical evidence did not evidence the degree of back and leg pain. Specifically, the ALJ pointed out that "although Dr. Umolu repeatedly observed sciatica, no imaging was conducted to identify the degree of the problem and possible surgical remedy." Id. In addition, the ALJ noted that an EMG showed no neuropathy and that there were no records of vascular studies in Dr. Umolu's reports.

12

Holtz criticizes the ALJ's evaluation of Dr. Umolu's opinion by arguing that numerous tests exist in the record to counter the ALJ's conclusion that Dr. Umolu's records evidenced insufficient medical findings to support his opinion. However, as the Commissioner points out and Holtz does not refute, many of the tests cited by Holtz in support of her argument were ordered by other doctors, were unrelated to Holtz' back pain, and were not relied upon by Dr. Umolu. As such, this Court does not find the ALJ's decision to afford Dr. Umolu's opinion less weight because it was unsupported by sufficient objective medical tests to be errant.

Holtz next criticizes the ALJ's failure to discuss the opinion of Dr. Sherritt. Despite this oversight, however, the Commissioner argues that the consequence of the ALJ's failure to discuss Dr. Sherritt's opinion is of questionable significance. Specifically, the Commissioner notes that Holtz saw Dr. Sherritt primarily for gynecological issues and that Dr. Sherritt served primarily to refer Holtz to other physicians for treatment of conditions unrelated to Holtz' pain. In addition, the Commissioner notes that Dr. Sherritt proffered his opinion regarding disability six months after his last examination of Holtz. Further, the Commissioner points out that the last time Dr. Sherritt had actually examined Holtz, it was prior to Holtz' alleged onset date and at a time when Holtz was still working. Holtz does not refute that these arguments limit the materiality of the ALJ's failure to specifically discuss Dr. Sherritt's opinion. Instead, Holtz argues that the ALJ should have contacted Dr. Sherritt to determine whether the scope of Dr. Sherritt's treatment was broader than gynecological care and referrals to other doctors.

This Court considers the ALJ's failure to specifically discuss Dr. Sherritt's opinion to be suspect in light of the regulations requiring the ALJ to evaluate the opinions of a claimant's treating physicians. However, based upon the parties' arguments, this Court is persuaded that

the ALJ's failure in this instance was immaterial as to the ultimate question of disability. Specifically, this Court notes Holtz' failure to refute the arguments that Dr. Sherritt's treatment was limited to issues unrelated to Holtz' pain, that Dr. Sherritt proffered his opinion six months after last seeing Holtz, and that Dr. Sherritt had not examined Holtz after her alleged onset date. These facts suggest that Dr. Sherritt's opinion, as to the ultimate question of disability, was tenuous at best.

Further, Holtz' failure to directly refute these arguments, arguing instead that the ALJ should have developed the record to determine the actual scope of Dr. Sherritt's treatment, suggest to this Court that Holtz' objection is not that the opinion was material and should have been addressed but, rather, that the materiality or immateriality of the opinion should have been examined through direct testimony from Dr. Sherritt. This Court does not find this argument to be persuasive, however, as Holtz had an opportunity to call Dr. Sherritt at the hearing and could have supplemented the record with explanations from Dr. Sherritt regarding the scope of his treatment but failed to do either. As such, and in the absence of clear objections to the alleged immateriality of the ALJ's failure to discuss Dr. Sherritt's opinion, this Court concludes that the ALJ's failure to specifically address Dr. Sherritt's opinion to be immaterial in this instance.

Holtz additionally challenges the ALJ's incorporation of Dr. Mazurek's stated limitations into the RFC. Specifically, Holtz argues that, because the ALJ found Holtz to be capable of a limited range of light work, the ALJ, necessarily, also opined that Holtz was capable of standing/walking for six hours. Holtz notes that Dr. Mazurek opined that Holtz was capable of standing/walking for less than two hours and argues that this opinion is inconsistent with a finding of the ability to stand/walk for six hours. However, a closer look at the ALJ's opinion

14

and the law reveals that Holtz' argument in this regard is misleading factually and incorrect legally.

To begin, from the text of the ALJ's RFC finding, this Court does not agree that the ALJ found Holtz capable of standing/walking for six hours. The ALJ's RFC finding, in regards to Holtz' ability to stand/walk is stated as follows:

> [Holtz] cannot engage in prolonged walking, and she requires the opportunity to sit or stand at will. [Holtz] is able to remain in either a sitting or standing position for at least 30 minutes at a time.

Tr. 44.

Indeed, instead of relying upon the ALJ's stated opinion, Holtz apparently relies on an errant reading of the definition of light work in the Social Security Regulations to conclude that the ALJ indirectly found Holtz capable of standing/walking for six hours. In particular, Holtz cites 20 C.F.R. § 404.1567(b) to support her argument that the legal definition of light work requires the ability to stand/walk for six hours. However, contrary to Holtz' characterization, this Court notes that the cited section does not include that specific ability in its definition. Instead, the section states that light work "requires a good deal of walking or standing." 20 C.F.R. § 404.1567(b). Consequently, this Court does not conclude that the ALJ made a finding that Holtz could stand/walk for six hours, but rather made a conclusion that was compatible with, and arguably even more restrictive than, the findings of Holtz' treating physician, Dr. Mazurek. As such, this Court is persuaded that the ALJ did not improperly assess the opinions of Dr. Mazurek.

In addition to her arguments regarding the ALJ's treatment of her treating physicians, Holtz argues that the ALJ failed to include limitations related to her hands and need to recline in

the his ultimate RFC finding. The Commissioner responds to these arguments by noting that Holtz' evidence in support of these limitations is primarily proffered through Holtz' own testimony and is largely unsupported by objective medical evidence. In addition, the Commissioner points out that, although a few doctors referenced related pain conditions in their medical reports, no doctor discussed Holtz' hand condition or its limiting effects in their opinions regarding Holtz' disability.

This Court finds the Commissioner's arguments in this regard to be persuasive as well. This Court has already found that the ALJ's opinion that Holtz' testimony was not fully credible to be reasonable. To the extent that these purported additional limitations find support only in Holtz' testimony, in particular the alleged need to recline six hours a day, this Court concludes that they were fully and reasonably considered pursuant to the ALJ's credibility analysis. Further, this Court also concludes that the ALJ's decision to not directly discuss the alleged limitations from Holtz' hand issues was reasonable in light of the minimal objective evidence offered to support this limitation and in light of the decisions of Holtz' own treating physicians to not include this limitation in their opinions regarding Holtz' disability.

Consequently, this Court concludes that the ALJ's ultimate RFC determination was substantially supported, sufficiently articulated, and reasonable.

   3. <u>The ALJ reliance on the VE's testimony was proper.</u>

Finally, Holtz raises several arguments to discredit the ALJ's reliance upon the VE's testimony in determining that Holtz retained the capacity to do her past relevant work.

When posing hypotheticals to a VE, the regulations require that the ALJ consider the combined effects of a claimant's impairments. 20 U.S.C. § 404.1523. To the extent the ALJ

relies on the testimony from a VE, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers in order to accurately gauge how many jobs are available to the claimant in the national economy. Young v. Barnhart, 362 F.3d 995, 1003 (7th Cir. 2004).

Holtz chiefly argues that the ALJ misinterpreted the VE's testimony and errantly concluded that the past relevant work that Holtz could still perform included both sedentary and light work. Instead, Holtz argues that, had the ALJ had properly interpreted the VE's testimony, the ALJ would have found that Holtz would only be able to perform her past sedentary work. Based upon Holtz' argument alone, this Court does not consider it necessary to further evaluate the propriety of the ALJ's interpretation of the VE's testimony. Regardless as to whether the ALJ improperly characterized the testimony, Holtz concedes that the ALJ would still have concluded that Holtz could still perform past sedentary work. As such, this Court concludes that any potential errant interpretation by the ALJ was immaterial to the ALJ's ultimate conclusion that Holtz was not disabled.

Holtz additionally argues that the ALJ failed to verify that the her past work was consistent with her RFC, failed to verify the VE's conclusions with the DOT, and failed to include more limitations than those posed in the ALJ's RFC finding. None of these arguments are persuasive. The ALJ did verify that Holtz' past relevant work did not require the performance of work-related activities precluded by her [RFC]. Further, although the ALJ failed to comport with the technical requirement to orally verify that the VE's testimony was consistent with the DOT, Holtz has failed to evidence an inconsistency between the VE's testimony and the DOT that would suggest that the error was material. Finally, this Court has already concluded

that the ALJ's RFC finding was substantially supported; and, therefore, the ALJ did not error in proffering hypotheticals consistent with that finding.

As such, this Court concludes that the ALJ's reliance upon the testimony of the VE was reasonable and any errors in procedure or interpretation were immaterial to the ALJ's ultimate determination that Holtz was not disabled.

### III. CONCLUSION

The ALJ's determination that Holtz was not credible was supported by substantial evidence. In addition, the ALJ's consideration of Holtz' RFC was also supported by substantial evidence. Finally, the ALJ's reliance on the VE' testimony was reasonable. Therefore, Holtz's request for remand is **DENIED**. [Doc. No. 1]. The Clerk is instructed to term the case in favor of the Commissioner.

**SO ORDERED**.

Dated December 1, 2009.

 S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge